

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL J. BUCK, | § | |
| | | No. 08-16-00294-CR |
| Appellant, | § | |
| | | Appeal from the |
| V. | § | |
| | | 243rd District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | (TC# 20160D01234) |

## O P I N I O N

Michael Buck appeals his convictions of two counts of aggravated sexual assault. Appellant waived his right to a jury trial and entered an open plea of guilty. The trial court found Appellant guilty and assessed punishment on each count at imprisonment for twenty-three years' in the Texas Department of Criminal Justice-Institutional Division. We affirm.

## FACTUAL SUMMARY

In March 2016, an El Paso County grand jury returned a two-count indictment against Appellant alleging he committed aggravated sexual assault and used or exhibited a deadly weapon, namely, a gun, in the commission of the offense. Appellant entered a not guilty plea at the arraignment on April 12, 2016. Appellant's attorney raised concerns about his medical condition and need for medical treatment at a status hearing and bond hearing in May 2016. The trial court reduced Appellant's bond from $100,000 to $75,000.

On May 5, 2016, the trial court entered an order setting the case for an Article 28.01 hearing[1] on August 31, 2016. The order notified the parties that all Article 28.01 motions must be filed seven days before the hearing and all motions would be heard on the scheduled hearing date. Appellant did not file an election to have the jury assess punishment. At the Article 28.01 hearing on August 31, 2016, Appellant's attorney addressed ongoing concerns about Appellant's medical condition and need for treatment. The court stated that the medical issues needed to be addressed by the doctor at the county jail. Appellant's counsel stated that she had filed written notice of insanity defense and she had just received a copy of the examining doctor's report. Appellant did not raise any other issues at the 28.01 hearing.

On September 6, 2016, the court conducted a final judge's conference in the case, and Appellant's counsel informed the court that she wanted to withdraw because Appellant was dissatisfied with her representation of him. Counsel explained that the State had offered Appellant a five-year plea bargain, but Appellant wanted probation and the State would not offer probation. The trial judge stated that he would not address counsel's request to withdraw until she had filed a written motion and reminded counsel that while he would consider the motion to withdraw she should be prepared to go to trial in ten days. Counsel filed a written motion to withdraw on September 8, 2016. The court denied the motion. On the trial date, September 19, 2016, the trial court spoke with the attorneys before Appellant arrived in the courtroom. Appellant's attorney informed the court that Appellant wanted to plead guilty, but the State's offer had increased from five years to ten years. When counsel asked whether the court would accept the plea bargain, the

---

[1] TEX.CODE CRIM.PROC.ANN. art. 28.01 (West 2006).

trial judge responded that it would be an open plea and he would not commit himself prior to the plea. When counsel stated that she needed to speak to Appellant and confirm whether he wished to plead guilty, the court told her that Appellant's case was going to be resolved that day whether he proceeded with a jury trial or entered a plea of guilty.

After Appellant arrived, the court asked him whether he intended to enter an open plea of guilty, and Appellant replied that he wanted to go to trial and represent himself. The court informed Appellant that because the available jury panel had been used on another case, the trial would be continued until Friday, September 23. The court then engaged in the following exchange with Appellant:

> [The trial court]: Mr. Buck, let me explain a couple of things to you. One, I am not -- your attorney's motion to withdraw was denied, and it's still denied. You are here on a first-degree felony. How many counts?
>
> [The prosecutor]: Two counts, Your Honor.
>
> [The trial court]: Two counts. All right. Have you explained the consecutive sentencing to your client, ma'am?
>
> [Defense counsel]: No, Your Honor.
>
> [The trial court]: Okay. Take a minute and do it real quick.
>
> (Short pause.)
>
> [The trial court]: Let the record reflect counsel had an off-the-record conversation with her client. Did you understand your attorney's explanation of consecutive sentencing, what's commonly known as stacking?
>
> [Appellant]: Yes, ma'am -- I mean, yes, sir.
>
> [The trial court]: Mr. Buck, I also want to point out to you that you have an absolute right to represent yourself. You are looking at five to 99 or life on count 1. You are looking at five to 99 or life on count 2. I'm going to request your counsel be

- 3 -

available to you. If you want to proceed pro se, that is your right. I also want to tell you, Mr. Buck, that this Court will hold you to the same standard as I do these two prosecutors who have graduated from law school. Do you understand that?

[Appellant]: Yes, sir.

[The trial court]: I know you are not familiar --

[Appellant]: Not at all. Not at all.

[The trial court]: I know you're not familiar with the rules of evidence.

[Appellant]: Not at all.

[The trial court]: I will hold you to the same standard. Do you understand that?

[Appellant]: Yes, sir.

[The trial court]: I am bound by the law to enforce the rules of evidence and the code of criminal procedures, the statutes. You will proceed and be held accountable, just like any other lawyer. Now, if you do not want the assistance of Ms. Caballero, that is your decision. I'm going to request -- let me restate that. I'm going to order that she be sitting in the vicinity. Okay. But understand something. You will not start this trial and expect her to take it over. You proceed pro se, sir, you will finish this trial pro se. She will be there merely to assist you and answer your questions. She's not going to try the case for you. Do you understand that?

[Appellant]: Yes, sir. May I say something?

[The trial court]: Yes, sir.

[Appellant]: Okay. When I came in on August 31st, I was offered a plea of five years. At the time, I asked my lawyer, 'I would like to think about this. Can you give me an idea of how much time I can have to think about it?' And she said, 'You've got a week.' Okay. I came in on 9/6 and told her that I would go ahead and accept the five years and that way, I wouldn't have to go to trial. And I asked her if she got any of the evidence that I asked her to get, such as my medical records and other things, and she stated no. So I know that my case was really weak. So that's why I went ahead and said I would accept the five years. Then she came Tuesday the 13th, told me the five years had been taken off the offer. I don't think she's going to be able to -- be able to represent me the way that I would feel like I wanted to be represented because she keeps going back to the idea that I don't want

to be represented because I have cancer. That's not the way I want to be represented.

[The trial court]: Mr. Buck, listen to me and listen to me carefully. I'm not interested in what you think the strength of your case is. What you need to understand, if this jury says guilty on count 1, it's five to 99 or life. If they say guilty on count 2, that's five to 99 or life, and I and I alone will decide whether to stack you or let them ride.

[Appellant]: I thought the jury had --

[The trial court]: No, sir.

[The prosecutor]: Your Honor, I don't know if the defendant is aware, but he's -- the election after the 28.01s -- I believe he's going to the judge for punishment. Am I correct?

[The trial court]: Let me rephrase that. If they find you guilty, I will assess punishment between five and 99 or life on count 1. Then I'll decide count 2, five to 99 or life. Then I will decide whether to stack them or let them run concurrent. I and I alone will make that decision. Now, Mr. Buck, if -- it's my understanding, Ms. Caballero, that the complainant knew the defendant and is fully intending to appear in Court and testify that the defendant is the one who sexually assaulted her.

[Defense counsel]: Judge, my understanding -- is the Court asking?

[The trial court]: Yeah. I'm not saying right or wrong, just what she's going to say.

[Defense counsel]: My understanding from the prosecutor is that the complainant is prepared to come in.

[The trial court]: Okay. Mr. Buck, understand, I don't know if she's telling the truth or she isn't. I'm merely telling you what the State anticipates she's going to say. If the jury doesn't believe her, good for you. If they do believe her, you have a problem because I am going to sentence you.

[Appellant]: Well, in that case, Your Honor, I'd like to go ahead and take the open plea because I thought that the jury would have the right to assess the punishment.

[The trial court]: No, sir. You are mistaken. The jury will tell you guilty or not guilty, count 1; guilty, not guilty count 2.

[Appellant]: All right. Then may I go ahead and plea -- an open plea, sir?

Before the trial court responded, Appellant's counsel asked the trial court to consider allowing Appellant to plead guilty on the original five-year offer. The trial court informed the parties that it would not accept the plea bargain even if the State was willing to offer it. The court then stated the following to Appellant:

> [The trial court]: These are your options, Mr. Buck. One, on Friday, we will empanel another jury panel. You will go to trial. Two, I cannot stop you from entering a plea to that jury, but the reality is, I will -- if you enter a plea of guilty to the jury, I will instruct them to find you guilty, they will do so, and then you come to me for punishment. So I don't consider that a viable option. Or two [sic], you plea guilty today on what we call an open plea, meaning there is no recommendation from the State of Texas to bind the defense, and I will assess an appropriate punishment.

> [Appellant]: All right. I'd like to go ahead and plea to the open plea, sir.

The court then took a short recess so the plea papers could be prepared and executed. The plea papers include the admonishments required by Article 26.13 of the Code of Criminal Procedure.[2]

Following the recess, Appellant entered a plea of guilty and stated to the court that he was entering his guilty plea freely and voluntarily. The plea papers were admitted into evidence as State's Exhibit 1. Appellant's attorney stated that she explained State's Exhibit 1 to Appellant and she believed Appellant understood the admonishments, his rights, and the consequences of giving up those rights. The plea papers include the following waiver of the right to appeal:

> I have also been informed of my right to pursue a motion for new trial and/or appeal, including the right to appeal in the event of a subsequent adjudication of guilt after being placed on deferred adjudication community supervision or a revocation of regular community supervision, and that I may waive this right. After having consulted with my attorney, I do hereby voluntarily, knowingly and intelligently waive my right to pursue a motion for new trial or appeal.

---

[2] *See* TEX.CODE CRIM.PROC.ANN. art. 26.13 (West Supp. 2017).

By placing his signature on this page of State's Exhibit 1, Appellant acknowledged that he had read the page, understood it, and signed it for the stated purpose.

When the trial court asked the State whether there was a plea bargain, the prosecutor replied that there was not, but the State had agreed to waive its right to a jury trial in exchange for Appellant waiving his right to appeal. Appellant's attorney confirmed that she explained to Appellant "that by signing these plea papers in this particular agreement, he understood he was waving his right to appeal in return for the State waiving its right to a jury trial."

The trial court accepted Appellant's guilty plea and conducted a separate punishment hearing the following day. Both the State and defense presented evidence and witnesses relevant to sentencing. The trial court assessed Appellant's punishment at imprisonment for twenty-three years on each count and ordered that the sentences run concurrently.

## VOLUNTARINESS OF THE GUILTY PLEA
## AND WAIVER OF THE RIGHT TO APPEAL

In his sole issue, Appellant contends that the trial court deprived him of due process by coercing him to waive his right to a jury trial and enter an open plea of guilty. Appellant asserts that the trial court coerced the guilty plea by (1) telling Appellant that his sentences could be stacked when they could not; (2) strongly suggesting the trial court would stack the sentences if Appellant chose to go to trial; (3) wrongfully denying Appellant his right to elect the jury to assess punishment; (4) giving Appellant only two options, both of which required Appellant to plead guilty; and (5) telling Appellant that going to trial was not a viable option. The State initially

responds that the Court does not have jurisdiction to address this issue because Appellant waived his right to appeal. Appellant has, however, challenged the voluntariness of his waiver of the right to appeal.

A defendant in any criminal action has the right of appeal. TEX.CODE CRIM.PROC.ANN. art. 44.02 (West 2018). The right to appeal can be waived by a defendant in a non-capital case. *See* TEX.CODE CRIM.PROC.ANN. art. 1.14(a)(West 2005); *Monreal v. State*, 99 S.W.3d 615, 617 (Tex.Crim.App. 2003). A valid waiver which is voluntarily, knowingly, and intelligently made will prevent a defendant from appealing a conviction absent permission from the trial court. *Ex parte Broadway*, 301 S.W.3d 694, 697 (Tex.Crim.App. 2009); *Monreal*, 99 S.W.3d at 617. An attack on a waiver of the right to appeal will not be considered unless the appellant presents factual allegations supporting a claim that the waiver was coerced or involuntary. *Ex parte Tabor*, 565 S.W.2d 945, 946 (Tex.Crim.App. 1978); *Perez v. State*, 885 S.W.2d 568, 570 (Tex.App.--El Paso 1994, no pet.). In this case, Appellant challenges the voluntariness of his waiver of the right to appeal on the same grounds as the voluntariness of his guilty plea. Consequently, we will consider the merits of the arguments presented.

Consistent with due process, a guilty plea must be made with a clear understanding of direct consequences of the plea. *Mitschke v. State*, 129 S.W.3d 130, 132 (Tex.Crim.App. 2004). A guilty plea is valid only if it represents a voluntary and intelligent choice among the courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). A court shall not accept a plea of guilty unless the defendant enters the plea freely and voluntarily. TEX.CODE CRIM.PROC.ANN. art. 26.13(b)(West Supp. 2017). When a trial court

properly admonishes a defendant before he enters a plea of guilty, the admonishments constitute a *prima facie* showing that the plea was both knowing and voluntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App. 1998); *Fielding v. State*, 266 S.W.3d 627, 636 (Tex.App.--El Paso 2008, pet. ref'd). Article 26.13 requires a trial court to provide a defendant with certain admonishments before it accepts a plea of guilty or *nolo contendere*. *See* TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(1)-(5). The trial court complied with Article 26.13 by providing the admonishments to Appellant in writing. *See* TEX.CODE CRIM.PROC.ANN. art. 26.13(d). Further, Appellant testified that he was entering the guilty plea freely and voluntarily. Appellant argues that his guilty plea was involuntary, however, because the trial court misinformed Appellant regarding his options and effectively told Appellant that he had to waive his right to a jury trial and plead guilty.

### 1. Stacking the Sentences

Appellant first complains that the trial court not only erroneously informed him that the court could stack his sentences, but also suggested that the court would stack the sentences if Appellant chose to go to trial before a jury. A trial judge has discretion to stack sentences if the law authorizes the imposition of cumulative sentences. *See Nicholas v. State*, 56 S.W.3d 760, 765 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). Article 42.08 authorizes a judge to cumulate sentences for two or more convictions. *See* TEX.CODE CRIM.PROC.ANN. art. 42.08(a)(West 2018). Under Section 3.03(a) of the Penal Code, if the defendant is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, the sentences must be concurrently except as provided in Section 3.03(b). TEX.PENAL CODE ANN. § 3.03(a), (b)(West Supp. 2017). Section 3.03(b)(2)(A) provides that sentences may run consecutively for aggravated

sexual assault committed against a victim younger than seventeen years of age.  TEX.PENAL CODE ANN. § 3.03(b)(2)(A).

Appellant was charged with two counts of aggravated sexual assault, but the evidence submitted at the punishment hearing showed that the victim was not under seventeen years of age. Thus, the trial court was prohibited from ordering the sentences to run consecutively.  While the trial court misinformed Appellant about the availability of consecutive or stacked sentences in this case, Appellant has failed to show that this misinformation caused him to waive his right to a jury trial and enter a plea of guilty.  The trial court told Appellant that the court, not the jury, was assessing punishment whether he went to jury trial or entered an open plea of guilty.  In other words, the trial court informed Appellant that stacked sentences were an option in either scenario. Under these circumstances, the trial court's erroneous statements about the possibility of stacked sentences did not render Appellant's waiver of his right to a jury trial and decision to plead guilty involuntary.

### 2. Punishment Election

Appellant next argues that the trial court coerced the plea by wrongfully denying Appellant his right to elect the jury to assess punishment.  Appellant directs our attention to Article 37.07, § 2(b), Appellant contends that the prosecutor fraudulently represented that he could not elect for the jury to assess punishment if he proceeded to a jury trial.  Article 37.07, § 2(b) provides as follows:

> Except as provided by Article 37.071 or 37.072, if a finding of guilt is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in any criminal action where the jury may recommend community supervision and the defendant filed his sworn motion for

community supervision before the trial began, and (2) *in other cases where the defendant so elects in writing before the commencement of the voir dire examination of the jury panel*, the punishment shall be assessed by the same jury, except as provided in Section 3(c) of this article and in Article 44.29. If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change the election of one who assesses the punishment. [Emphasis added].

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 2(b)(West Supp. 2017).

While Article 37.07, § 2(b) establishes the deadline for filing the defendant's election for the jury to assess punishment, a different deadline is imposed if the trial court sets a case for an Article 28.01 hearing. Under Article 28.01, a trial court is authorized to set any criminal case for a pretrial hearing before the case is set for trial, and direct the defendant and the State's attorney to appear for a conference and hearing. TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1 (West 2006). The pretrial hearing shall be to determine several matters, including the "[p]leadings of the defendant." TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1(2). The defendant's pleadings include the defendant's election to have the jury assess the punishment in the event he is found guilty. TEX.CODE CRIM.PROC.ANN. art. 27.02(7)(West 2006). When a criminal case is set for an Article 28.01 hearing, "any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, exception by permission of the court for good cause shown . . . ." TEX.CODE CRIM.PROC.ANN. art. 28.01, § 2. In *Postell v. State*, 693 S.W.2d 462, 464 (Tex.Crim.App. 1985), the Court of Criminal Appeals harmonized Articles 28.01 and 37.07 and held that if the trial court conducts an Article 28.01 hearing, then the defendant must file his election for the jury to assess punishment within the time prescribed by Article 28.01, § 2.

On May 5, 2016, the trial court entered an order setting the case for an Article 28.01 hearing on August 31, 2016. The order notified the parties that all Article 28.01 motions must be filed

- 11 -

seven days before the hearing and all motions would be heard on the scheduled hearing date. The trial court conducted the hearing as scheduled on August 31, 2016 and Appellant did not file an election to have the jury assess punishment by the deadline imposed by Article 28.01, § 2. After being informed by the prosecutor and the trial court that he had not made such an election, Appellant did not seek permission of the trial court to file an untimely election for the jury to assess punishment nor did he attempt to show that good cause existed. Thus, the prosecutor and the trial court did not misrepresent to Appellant that the court, rather than the jury, would assess punishment in this case.

### 3. Waiver of Right to Jury Trial

Finally, Appellant contends that the trial court coerced the guilty plea by telling him that he had only two options, both of which required Appellant to plead guilty, and by telling Appellant that going to trial was not a viable option. When the trial court's comments are read in context, the trial court clearly explained to Appellant that he had a right to have a jury trial to determine his guilt or innocence on each count, or he could enter an open plea of guilty. The court observed that Appellant could also enter a plea of guilty before the jury, but this was not really a "viable option" because the court would instruct the jury to find Appellant guilty and the court would then assess punishment. The trial court did not at any time during the proceedings inform Appellant that proceeding to jury trial on guilt or innocence was not a viable option.

The record before us reflects that Appellant freely, voluntarily, and with knowledge of the consequences, waived his constitutional rights, including his right to a jury trial, and entered an open plea of guilty. We further conclude that Appellant's waiver of his right to appeal is not only

voluntary, it is enforceable because the waiver was the result of a bargain. *See Ex parte Broadway*, 301 S.W.3d at 697-99 (holding that a defendant may knowingly and intelligently waive his entire appeal as a part of a plea, even when sentencing is not agreed upon, where consideration is given by the State for that waiver). We overruled the sole issue presented and affirm the judgment of the trial court.

August 2, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)